[No. D037559. Fourth Dist., Div. One. Mar. 20, 2002.]

LUIS MICHAEL BUSTILLOS, Plaintiff and Appellant, v. MICHAEL KEVIN MURPHY, Defendant and Respondent.

**COUNSEL**

Luis Michael Bustillos, in pro. per., for Plaintiff and Appellant.

Winet, Patrick & Weaver, Randall L. Winet and Daniel M. Gilleon for Defendant and Respondent.

## OPINION

**KREMER, P. J.**—Luis Michael Bustillos appeals a judgment denying him a prescriptive easement to a network of trails on property owned by Michael Kevin Murphy. Bustillos contends the court erred in granting summary judgment on the basis that (1) Civil Code[1] section 1009 bars his claim for an easement for recreational purposes, (2) a prescriptive easement will not be granted for traveling over the land of another in many directions and courses, and (3) Bustillos's claim essentially amounted to a claim of an estate in the property that would effectively deny Murphy the use of his property. We affirm.

### FACTS

Murphy's property is undeveloped and adjacent to a residential development. Since 1973 Bustillos, as well as other people, have been using trails on the property for recreational uses such as riding motorcycles, walking, riding horses, and walking dogs. Bustillos has repaired a number of trails and he has never seen anyone else repair the trails. As a result of the use by Bustillos and others, there is a network of trails traveling across most of the property and these trails are clearly visible in aerial photographs. Bustillos sought a prescriptive easement to use all the trails on the property for all the recreational uses he had made of the property in the past.

### DISCUSSION

Bustillos contends the court erred in ruling that his claim for a recreational use prescriptive easement was barred by section 1009 because, according to Bustillos, section 1009 applies only to public easements whereas he is seeking a private easement.

In pertinent part, section 1009 provides:

"(a) The Legislature finds that:

"(1) It is in the best interests of the state to encourage owners of private real property to continue to make their lands available for public recreational use to supplement opportunities available on tax-supported publicly owned facilities.

"(2) Owners of private real property are confronted with the threat of loss of rights in their property if they allow or continue to allow members of the public to use, enjoy or pass over their property for recreational purposes.

---

[1]All statutory references are to the Civil Code unless otherwise specified.

"(3) The stability and marketability of record titles is clouded by such public use, thereby compelling the owner to exclude the public from his property.

"(b) Regardless of whether or not a private owner of real property has recorded a notice of consent to use of any particular property pursuant to Section 813 of the Civil Code or has posted signs on such property pursuant to Section 1008 of the Civil Code, except as otherwise provided in subdivision (d), no use of such property by the public after the effective date of this section shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use, made by the owner thereof in the manner prescribed in subdivision (c) of this section, which has been accepted by the county, city, or other public body to which the offer of dedication was made, in the manner set forth in subdivision (c)."

█ In construing a statute, the task of the court is to determine and give effect to the Legislature's intent. (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1095 [282 Cal.Rptr. 841, 811 P.2d 1025]; *People v. Freeman* (1988) 46 Cal.3d 419, 425 [250 Cal.Rptr. 598, 758 P.2d 1128].) " 'In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.' " (*Quintano v. Mercury Casualty Co.* (1995) 11 Cal.4th 1049, 1055 [48 Cal.Rptr.2d 1, 906 P.2d 1057].) "The words must be construed in context in light of the nature and obvious purpose of the statute where they appear." (*Decker v. City of Imperial Beach* (1989) 209 Cal.App.3d 349, 354 [257 Cal.Rptr. 356].) The statute "must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity." (*Beaty v. Imperial Irrigation Dist.* (1986) 186 Cal.App.3d 897, 902 [231 Cal.Rptr. 128].)

█ There is no need to interpret the words of section 1009 in order to ascertain the Legislature's intent because the Legislature itself in the statute expressly stated its intent, i.e., to encourage land owners to allow their land to be used for recreational purposes without having to worry about members of the public obtaining an interest in the property as a result of that use. The statute effectuates this purpose by providing that no recreational use of private property "shall ever ripen to confer upon the public . . . a vested right to continue to make such use permanently" unless the property owner

dedicates the land to public use and the dedication of property is accepted by the government. (*Id.*, subd. (b).)

Bustillos's argument that his case is not covered by section 1009 because he is seeking a private easement (rather than an easement on behalf of the public generally) is unpersuasive. Bustillos is a member of the public that has used the property over the years for recreational purposes. Bustillos does not have any use or interest in the property that is distinguishable from the public generally. The property has been used not only by Bustillos but also by many others over the years. The effect of granting a prescriptive easement in this case would mean that Bustillos, as well as other members of the public, would gain a permanent right to use Murphy's property for recreational purposes. There is nothing "private" about the prescriptive easement sought here or anything to distinguish Bustillos's situation from that contemplated by section 1009. Indeed, Bustillos's claim is exactly the type of claim addressed by the Legislature in section 1009, i.e., an attempt by a member of the public to obtain permanent recreational use of private property. The Legislature has made it clear that recreational use by a member of the public cannot ripen into a permanent right to use the property for recreational purposes. We agree with the trial court; as a matter of law pursuant to section 1009, Bustillos was not entitled to a prescriptive easement across Murphy's property for recreational purposes.

Since we have concluded that section 1009 bars Bustillos from obtaining a prescriptive easement to use Murphy's property, we need not discuss Bustillos's two remaining grounds for reversal, i.e., that (1) a prescriptive easement may be granted even when an individual travels on different courses and different directions over the property of another, and (2) that granting the prescriptive easement here would not deprive Murphy of essentially all use of his property. ■ We do note that the cases have limited prescriptive easements for traveling across the property of another to a single defined right-of-way and have denied easements to generally travel across another's property. (See *Dooling v. Dabel* (1947) 82 Cal.App.2d 417, 424 [186 P.2d 183]; *Applegate v. Ota* (1983) 146 Cal.App.3d 702, 710 [194 Cal.Rptr. 331].) Bustillos has not cited any case nor have we found any case that would support granting a prescriptive easement for a network of trails. ■ As to Bustillos's other argument, case law generally holds that a prescriptive easement may not be granted if doing so would result in depriving the owner of essentially all rights in the property; in that case, the claimant must proceed under the adverse possession doctrine and show payment of taxes on the disputed property. (See *Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1305-1307 [54 Cal.Rptr.2d 284], but see *Hirshfield v. Schwartz* (2001) 91 Cal.App.4th 749 [110 Cal.Rptr.2d 861]

[holding that a court in equity, applying the hardship doctrine, may grant an easement that effectively denies the owner the use of his property].) Here, Bustillos's claim for a network of trails crisscrossing the majority of the property would divest Murphy of essentially all rights to the property, rendering it unbuildable and unsaleable. Accordingly, Bustillos would have to proceed under the adverse possession doctrine and establish the payment of taxes on the property.

## DISPOSITION

The judgment is affirmed.

Benke, J., and O'Rourke, J., concurred.