[No. C072284. Third Dist. Mar. 5, 2015.]

ANTONIO PULIDO et al., Cross-complainants and Respondents, v. ALFRED ROBERT PEREIRA, JR., Individually and as Trustee, etc., Cross-defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II and III of the Discussion.

1248

CouNSEL

Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Cross-defendant and Appellant.

Law Offices of William E. Barnes, Mark H. Salyer and William E. Barnes for Cross-complainants and Respondents.

OPINION

**BLEASE, Acting P. J.**—This action began as one by several neighboring property owners to establish an easement for the purpose of access to their properties over land owned by Alfred Robert Pereira, Jr. (appellant). The property owners brought the action in 2007, following Pereira's purchase of his property in 2006 and subsequent blocking of the entrance to Quartz Hill Drive, over which the neighbors claimed they had a prescriptive easement by virtue of their use and the use of their predecessors in interest for access to their properties.

The Pulidos (respondents) were named defendants in the suit by the neighbors, but no allegations of wrongdoing on the Pulidos' part were included in the complaint. The Pulidos filed a cross-complaint against Pereira, alleging their right to an easement across Pereira's property on several theories, including an easement by prescription. This appeal involves only the Pulidos' cross-complaint.

The trial court found the Pulidos had satisfied their burden of proving the continuous, open, and notorious use of Quartz Hill Drive for the five-year prescriptive period. It granted a permanent injunction against Pereira "from interfering with the PULIDOS use and enjoyment of the easement across PEREIRA's realty as described and adjudged herein." Pereira argues there was insufficient evidence to support the trial court's finding that the Pulidos and their predecessors used the road openly, notoriously, and continuously for a period of five years. We shall conclude the evidence was sufficient and we will affirm the judgment.

In the published portion of this opinion, we conclude that Civil Code section 1009, which prevents the use of private property for recreational purposes by members of the public from ripening into a permanent right, is inapplicable to the facts of this case because the Pulidos claim a private prescriptive easement for the purpose of accessing their own property.

## FACTUAL AND PROCEDURAL BACKGROUND

The Pulidos purchased property in Calaveras County in 2001. When Antonio Pulido first visited the property he took Hogan Dam Road and turned off onto Quartz Hill Drive to access the property. There was no gate where he turned onto Quartz Hill Drive. When the Pulidos purchased their property, Dennis Lee owned the property that was later purchased by Pereira. The Pulidos bought the property with the intent to build a house on it. In the meantime, they used the property for target shooting. Antonio Pulido went to the property once or twice a month to walk around and shoot targets. Every time the Pulidos went to the property they had to untie a chain strung between two posts at the entrance to Quartz Hill Drive off Hogan Dam Road.

In 2007 the Pulidos' neighboring property owner, Pereira, informed them that he was going to put a lock on the gate. Antonio Pulido told Pereira to give him a key to the gate if he locked it. Pereira said he would think about it. The Pulidos continued to use Quartz Hill Drive to access their property, until one day they arrived at the gate and a woman there told them a court case had been filed and they were not to use the road anymore. Pereira later installed a lock and dug a trench across Quartz Hill Drive.

Pereira's actions in blocking Quartz Hill Drive affected several of the neighbors in the area, and on November 28, 2007, Roman and Rosa Olavarrieta and Gary and Rachael Fong, joint owners of a neighboring property, filed a complaint to prevent Pereira from blocking their access to Quartz Hill Drive, and to determine their right to a prescriptive easement. Neighboring property owners Barbara Glenn, Erasmo Olavarrieta, and Donna Pyeatt were later added as plaintiffs in the action. The Pulidos were named defendants in that action.

The Pulidos cross-complained against Pereira. They sought a determination that they owned an easement over Quartz Hill Drive to access their property. They alleged several theories by which they were entitled to such easement: (1) easement by implication, (2) easement by implied dedication, (3) easement by prescription, (4) easement by necessity, and (5) equitable easement.

Following trial on the Pulidos' cross-complaint, the court's tentative decision determined the Pulidos had established a prescriptive easement over

Quartz Hill Drive. The trial court stated that "[t]he Pulidos['] use, together with that of their predecessors, has satisfied the burden of proving continuous use of Quartz Hill Drive for the five year prescriptive period." The trial court found there had been no easement to the public by implied dedication. Because of the finding of prescriptive easement, the court stated there was no need to resolve the issue of an equitable easement. The trial court made no findings with respect to the Pulidos' claim of easement by implication or by necessity. The trial court indicated it would grant the Pulidos a permanent injunction preventing Pereira from unreasonably interfering with the use and enjoyment of their easement over Quartz Hill Drive across the Pereira parcel.

Judgment was entered on the cross-complaint in favor of the Pulidos for an easement by prescription for ingress and egress over Quartz Hill Drive on Pereira's property. Pereira was permanently enjoined from interfering with the Pulidos' use and enjoyment of the easement, and the Pulidos were awarded damages in the amount of $1. It is from this judgment on the cross-complaint that Pereira appeals.

## DISCUSSION

"The elements necessary to establish a prescriptive easement are well settled. The party claiming such an easement must show use of the property which has been open, notorious, continuous and adverse for an uninterrupted period of five years." (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 [199 Cal.Rptr. 773, 676 P.2d 584].) Pereira raises two primary issues on appeal. First, he argues Civil Code section 1009, which provides that the public's use of another's property for recreational purposes will never ripen into a vested right, prevented the Pulidos from acquiring a prescriptive easement. Second, he argues there is no substantial evidence to support a finding of open, notorious, continuous, and uninterrupted use of the road for five years by the Pulidos or their predecessors.

I

*Civil Code Section 1009 Has No Application Under These Circumstances*

Civil Code section 1009 provides in relevant part:

"(a) The Legislature finds that:

"(1) It is in the best interests of the state to encourage owners of private real property to continue to make their lands available for public recreational use to supplement opportunities available on tax-supported publicly owned facilities.

"(2) Owners of private real property are confronted with the threat of loss of rights in their property if they allow or continue to allow members of the public to use, enjoy or pass over their property for recreational purposes. [¶] . . . [¶]

"(b) . . . [E]xcept as otherwise provided in subdivision (d), no use of such property by the public after the effective date of this section shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use, made by the owner thereof in the manner prescribed in subdivision (c) of this section, which has been accepted by the county, city, or other public body to which the offer of dedication was made, in the manner set forth in subdivision (c)."

As Pereira interprets this section, the Pulidos and their predecessors in interest were prevented from creating a prescriptive easement over Quartz Hill Drive because they used the road to access their own property, and they used their own property for recreational purposes, i.e., shooting guns, walking around, and picnicking. Pereira claims that the neighboring property owners passed over his property for recreational purposes as defined in the statute, when they passed over his property in order to use their own property for recreational purposes. This presents an issue of statutory construction in that we must determine whether the phrase "pass over their property for recreational purposes" (Civ. Code, § 1009, subd. (a)(2)) includes a neighboring property owner passing over the property of another for the purpose of recreating on his or her own property. We apply a de novo standard of review for this issue of statutory construction. (*McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 210 [89 Cal.Rptr.2d 295].)

"In statutory construction cases, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute. [Citation.] 'We begin by examining the statutory language, giving the words their usual and ordinary meaning.' [Citations.] If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. [Citations.] If there is ambiguity, however, we may then look to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] In such cases, we ' " 'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " ' " (*Estate of Griswold* (2001) 25 Cal.4th 904, 910–911 [108 Cal.Rptr.2d 165, 24 P.3d 1191].)

"An ambiguity arises when language is reasonably susceptible of more than one application to material facts." (*California State Auto. Assn. Inter-Ins.*

*Bureau v. Superior Court* (1986) 177 Cal.App.3d 855, 859, fn. 1 [223 Cal.Rptr. 246].) The language of Civil Code section 1009 is arguably ambiguous as applied here, making it necessary to determine whether the statute applies where a property owner uses the property of another by passing over such property in order to recreate on the owner's own private property.

■ The Legislature's intent in passing Civil Code section 1009 is expressed in the statute itself. The Legislature intended to encourage landowners to allow recreational use of their land without the threat of the public obtaining an interest in the property as a result of the use. (*Bustillos v. Murphy* (2002) 96 Cal.App.4th 1277, 1280 [117 Cal.Rptr.2d 895] (*Bustillos*).) In subdivision (b) of Civil Code section 1009, the phrase "no use of such property by the public . . . shall ever ripen to confer upon the public . . . a vested right to continue to make such use permanently . . . ," the "use of such property" refers back to subdivision (a)(1), which explains that the subject of the statute is the public recreational use of private real property.

Civil Code section 1009 does not apply here because there is no question of public use. Rather, this is a matter of a private prescriptive easement between neighboring landowners. Also, Civil Code section 1009 does not apply because the recreation taking place is neither on Pereira's property, nor is Pereira's property being passed over by the public to reach a public recreational area.

Pereira cites *Bustillos, supra,* 96 Cal.App.4th 1277 in support of his argument that Civil Code section 1009 applies to private easements. This is not a correct reading of *Bustillos.* Bustillos and others used an undeveloped property that was adjacent to a residential development for recreational purposes. (*Bustillos,* at p. 1279.) The undeveloped property was owned by Murphy. (*Ibid.*) Bustillos argued he was entitled to a private easement, and that Civil Code section 1009 did not bar such an easement because the section was applicable only to public easements. (*Bustillos,* at p. 1279.) The court did not hold that Civil Code section 1009 applies to private easements, as Pereira contends, but that Bustillos's interest was indistinguishable from the public generally, thus he could not claim a private easement. "The effect of granting a prescriptive easement in this case would mean that Bustillos, as well as other members of the public, would gain a permanent right to use Murphy's property for recreational purposes. There is nothing 'private' about the prescriptive easement sought here or anything to distinguish Bustillos's situation from that contemplated by [Civil Code] section 1009." (*Bustillos,* at p. 1281.)

■ This case is unlike *Bustillos* because the Pulidos' interest in the easement across Pereira's property is entirely distinguishable from the interest

of the public generally. The Pulidos seek a right-of-way easement to access their own property. That makes their interest distinguishable from the interest of the public at large. They are not merely passing through Pereira's property because it provides access to a public recreational area. Civil Code section 1009 was directed at encouraging owners to make their property available for "public recreational use . . . ." (Civ. Code, § 1009, subd. (a)(1).) It has no application here, where the use is private, and no recreation is taking place on Pereira's property.

## II, III[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

Butz, J., and Murray, J., concurred.

---

[*]See footnote, *ante*, page 1246.